**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

MARTI GERLACH, JESUS SANABRIA,
DAVID M. RUSSO and ALFONSO
SISNEROS,

    Plaintiffs,

          v.

DEVON BROWN, ROY HENDRICKS,
et al.,

    Defendants.

Civil Action No. 99-4699 (SRC)

**OPINION**

---

MAURICE ROMERO, WILLIAM
MUNOZ and LUIS BELTRAN, JR.,

    Plaintiffs,

          v.

DEVON BROWN, ROY HENDRICKS,
et al.,

    Defendants.

Civil Action No. 04-3493 (SRC)
(consolidated under No. 99-4699)

**CHESLER, U.S.D.J.**

    This matter comes before the Court on the applications by Plaintiffs David Russo, Luis Beltran, William Munoz, Maurice Romero and Jesus Sanabria (collectively, "Plaintiffs") and by Defendants Devon Brown, Roy Hendricks, Donald Mee, Samuel K. Atchison, J. Fleming, and Terry Moore (collectively, "Defendants"). This Court construes these applications as a motion

and cross-motion for partial summary judgment, pursuant to FED. R. CIV. P. 56, and a motion to dismiss as moot. For the reasons set forth below, partial summary judgment will be entered in Defendants' favor, and Defendants' motion to dismiss as moot will be granted.

## BACKGROUND

This case arises out of disputes over the practice of Native American religion by certain inmates in confinement administered by the New Jersey Department of Corrections. The inmate Plaintiffs and the Defendant New Jersey Department of Corrections have agreed on all but two provisions in two sets of guidelines governing inmates' practice of Native American religion: 1) the draft "Level I Internal Management Procedure Title: Guidelines for Religious Practice: Native American;" and 2) the "Level I Internal Management Procedure Title: Guidelines for Religious Practice: Native American Sweat Lodge Ceremonies" (collectively, the "IMPs"). The first provision presently at issue restricts the colors of certain Native American religious articles, permitting them only to be white, while the second provision allows guards to search inmates' religious articles outside the presence of the Supervisor of Chaplaincy Services or the Chaplain during a routine cell search, if the inmate gives permission. The parties have asked this Court to rule on the validity of these two provisions under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1.

The parties have briefed the issues of the validity of the IMP provisions under RLUIPA without bringing them under the umbrella of any particular rule of civil procedure, or identifying any specific procedural posture. Plaintiffs refer ambiguously to the procedural posture of the instant matter when they state that "in an effort to resolve the above-referenced matters, Plaintiffs and DOC have agreed to abide by the Court's decision regarding the constitutionality of the

disputed provisions." (Pls.' Br. 1.) Neither party says more about the procedural context, but both ultimately contend that they are entitled to judgment as a matter of law, based on the record as submitted to the Court. As such, this Court construes the applications as a motion and cross-motion for partial summary judgment, pursuant to FED. R. CIV. P. 56, and will decide this matter accordingly. In addition, Defendants have moved to dismiss as moot the injunctive relief claims of Plaintiffs Sisneros and Sanabria.

## ANALYSIS

I.   **Legal Standards**

   A.   Rule 56 Motion for Summary Judgment

Summary judgment is appropriate under FED. R. CIV. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury

3

could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003) (quoting United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991)). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. Jersey Cent. Power & Light Co. v. Lacey Township, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990); see also FED. R. CIV. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial"). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001).

If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts

immaterial." Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992) (quoting Celotex, 477 U.S. at 322-23).

## II. The parties' motions

### A. The motion and cross-motion for partial summary judgment

The relevant provision of RLUIPA states:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 2 of the Civil Rights of Institutionalized Persons Act (42 U.S.C. 1997), even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--
>   (1) is in furtherance of a compelling governmental interest; and
>   (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). RLUIPA assigns the plaintiff the burden of persuasion "on whether the law (including a regulation) or government practice that is challenged by the claim substantially burdens the plaintiff's exercise of religion." 42 U.S.C. § 2000cc-2(b).

In setting forth the legal standard they believe this Court must follow, Plaintiffs state: "RLUIPA requires a showing of both a compelling government interest and that the institution is using the least restrictive means of furthering that interest." (Pls.' Br. 5.) This is fine as far as it goes, but it overlooks the threshold requirement of the statute – the first clause of the first sentence quoted above – that must be satisfied before reaching the balancing test: a government must be imposing a substantial burden on religious exercise. In their opening brief, Plaintiffs fail to even address this key issue. Their reply addresses the issue but fails to show that either of the IMP provisions comes within this clause.

RLUIPA does not define the term "substantial burden," and the Third Circuit has not

defined "substantial burden" within the meaning of the statute in a precedential opinion.[1] The Third Circuit's non-precedential opinion in <u>Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch</u>, 100 Fed. Appx. 70, 77 (3d Cir. 2004), cites in dicta the definition set forth by the Seventh Circuit in <u>Civil Liberties for Urban Believers v. City of Chicago</u>, 342 F.3d 752, 761 (7th Cir. 2003).

In <u>Adkins v. Kaspar</u>, 393 F.3d 559, 568 (5th Cir. 2004), the Fifth Circuit summarized the varying interpretations of the "substantial burden" requirement made by other Circuits:

> Despite the RLUIPA's eschewing the requirement of centrality in the definition of religious exercise, the Eighth Circuit adopted the same definition that it had employed in RFRA cases, requiring the burdensome practice to affect a 'central tenet' or fundamental aspect of the religious belief. The Seventh Circuit, in contrast, abandoned the definition of 'substantial burden' that it had used in RFRA cases, holding instead that, 'in the context of RLUIPA's broad definition of religious exercise, a...regulation that imposes a substantial burden on religious exercise is one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise...effectively impracticable.' Neither did the Ninth Circuit retain the definition of 'substantial burden' that it had employed in RFRA cases, which required interference with a central religious tenet or belief. Turning to Black's Law Dictionary and Merriam-Webster's Collegiate Dictionary, the Ninth Circuit defined a 'substantial burden' as one that imposes 'a significantly great restriction or onus upon such exercise.' The most recent appellate interpretation of the term under the RLUIPA is that of the Eleventh Circuit, which declined to adopt the Seventh Circuit's definition, holding instead that a 'substantial burden' is one that results 'from pressure that tends to force adherents to forego religious precepts or from pressure that mandates religious conduct.'

<u>Id.</u> (citations omitted). After careful analysis, the Fifth Circuit rejected the use of a belief

---

[1] Nor has the Supreme Court, despite Plaintiffs' statement to the contrary: <u>Cutter v. Wilkinson</u>, 544 U.S. 709, 725 n.13 (2005), does not hold that RLUIPA protects "any religious practice regardless of whether it is 'central' to the religion." (Pls.' Reply Br. 5.) In the footnote Plaintiffs cite, the Court states that RLUIPA "does not preclude inquiry into the sincerity of a prisoner's professed religiosity." <u>Id.</u> The Court did not state that this was the only inquiry or the entire inquiry, merely that it was not a precluded one. Neither side has raised sincerity in the instant matter.

centrality standard.  Id. at 570.  The gist of that Court's conclusion is that, in the context of RLUIPA, a "substantial burden" is measured by the magnitude of the interference with the exercise of religion, not by the magnitude of the importance of any belief underlying the exercise.  Id. at 569-570.  This conclusion is in accord with the Seventh Circuit's formulation in Urban Believers: a substantial burden is "one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise . . . effectively impracticable."  342 F.3d at 761.

   A number of the Circuits, including the Fifth, have found support for the rejection of a belief centrality test in RLUIPA's definition of "religious exercise:" "The term 'religious exercise' includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief."  42 U.S.C. § 2000cc-5(7)(A).  This definition distinguishes exercise from belief and establishes that the statute affords protection to religious exercise that is independent of the centrality of any religious belief.  The definition makes clear that degree of centrality of a belief is unconnected to religious exercise, as it is understood in RLUIPA.  The Seventh Circuit used this observation as the foundation of its interpretation of "substantial burden."  Urban Believers, 342 F.3d at 761.

   In the context of this case, this point is important because Plaintiffs' main argument regarding the use of color relies on belief centrality and fails to properly address the "substantial burden" requirement, as understood by the majority of Circuits.  Plaintiffs contend that colored religious articles hold significant spiritual meaning in the Native American religion.  Plaintiffs argue that the burden of the IMP provision at issue is substantial because the magnitude of the meaning of color is great but, as discussed above, § 2000cc-5(7)(A) defines religious exercise so as to be independent of centrality of meaning.  Plaintiffs fail to offer any analysis of the degree to

which the IMP interferes with the actual exercise of Native American religion. Having argued only the centrality of beliefs about color, and having failed to examine the IMPs' impact on the exercise of religion, Plaintiffs have failed to show that the IMP places a substantial burden on religious exercise.

To support their assertion of the significance of color, Plaintiffs point to evidence of the significant spiritual meaning of colors in Native American religious worship. Plaintiffs offer two pieces of evidence: 1) a section from a Federal Bureau of Prisons' reference, entitled "Inmate Religious Beliefs and Practices," which explains two different kinds of color symbolism in Native American religion; and 2) a section from a Federal Bureau of Prisons' reference, entitled "American Indian Spirituality: Beliefs and Practices," which gives the same information. (Pls.' Br. Ex. B ¶¶ 12-13; Ex. C ¶¶ 12-13.) In the first kind of symbolism these references describe, the colors represent compass directions in a prayer circle; in the second, they have different meanings when worn on a headband. (Id.) Significantly, Plaintiffs have not asserted that the IMP provision at issue burdens religious practices involving prayer circles, or that wearing colored headbands is a religious practice.[2]

The evidence offered by Plaintiffs permits the inference that colors carry significant meaning in the Native American religion, but this does not show that a policy that forbids use of

---

[2] In their reply brief, Plaintiffs point to this statement in the Federal Bureau of Prisons reference: "Thus, such practices as the wearing of . . . headbands . . . are . . . statements of religious belief." (Pls.' Br. Ex. C. ¶ 5.) Significantly, this does not state that headbands must bear colored designs in order to function as a statement of religious belief. Plaintiffs do not allege that the IMP interferes with the religious exercise described in this quote, the wearing of headbands; the draft submitted by Plaintiffs specifically allows headbands to be worn. (IMP # PCS.002.REL.004 at 3, Pls.' Br. Ex. A.) Absent from Plaintiffs' briefing is any analysis of how a policy which allows the religious exercise of wearing headbands, but prevents the wearing of headbands with colored patterns, significantly burdens the exercise of religion.

colored items significantly interferes with religious exercise. If this Court followed the Seventh Circuit's standard, it could not find from the record before it that Plaintiffs have shown that this policy renders religious exercise effectively impracticable. If this Court followed the Ninth Circuit's standard, it could not find from the record before it that the policy imposes a significantly great restriction upon religious exercise. Plaintiffs have made no showing that the policy significantly interferes with what RLUIPA protects – religious exercise.

The closest Plaintiffs come to addressing the exercise of religion is in the argument and unauthenticated exhibit concerning the beaded design that they claim Plaintiff David Russo created as an adornment for a medicine bag. (Pls.' Br. 7.) Plaintiffs contend that the design has symbolic religious significance, and that "[e]ach and every bead used in creating [it] represents one of Mr. Russo's prayers; it is infused with his personal spiritual power and thereby gives religious protection to the sacred object he adorns with it. . ." (Id.) Thus, Plaintiffs argue, "[t]he use of colored beads [is] an act of personal prayer, which is done in private, and is fundamental to Native American religious practice." (Id.)

Even if this argument were supported by admissible evidence, it would not be sufficient to demonstrate that the IMP at issue constitutes a substantial burden on the exercise of religion. Plaintiffs have done no more than give an example of a use of color in a religious exercise. This does not establish that preventing this practice imposes a substantial burden on the exercise of religion. Even if this Court were to accept Plaintiffs' claim that the use of colored beads is an act of personal prayer, it has no basis to find that interfering with this practice substantially burdens Plaintiffs' exercise of personal prayer. Again, absent from Plaintiffs' briefing is any analysis of

how a policy which allows inmates to possess beading materials,[3] but not colored beading materials, significantly burdens the exercise of religion. Plaintiffs have certainly not shown that the policy necessarily bears direct, primary, and fundamental responsibility for rendering the exercise of personal prayer effectively impracticable. Urban Believers, 342 F.3d at 761.

It is not until the reply brief that Plaintiffs begin to address the threshold issue of whether the IMP provision burdens the exercise of religion. As a matter of procedure, this Court will not accept arguments offered for the first time in the reply brief, as they were not properly asserted in the moving brief and Defendants have not had the opportunity to respond to them. Laborers' Int'l Union v. Foster Wheeler Corp., 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it in its opening brief.") Even setting procedural considerations aside, however, the reply brief does not succeed in demonstrating a substantial burden on the exercise of religion.

In their reply brief, Plaintiffs try to point to something in the evidence they have submitted that leads to the conclusion that the color restriction imposes a substantial burden on religious exercise, but they do not succeed. Plaintiffs point to this statement in the Federal Bureau of Prisons reference: "Thus, such practices as . . . the practice of certain arts (i.e., beadwork . . .) . . . are . . . statements of religious belief." (Pls.' Br. Ex. C. ¶ 5.) The IMPs do not, however, ban beadwork. To the contrary, as just noted, the draft IMP allows inmates to have beading materials among their personal property. (IMP # PCS.002.REL.004 § IV.E, Pls.' Br. Ex. A.) Plaintiffs argue, however, that "if beads are limited to one color, the meaningful use of beadwork becomes impossible." (Pls.' Reply Br. 8.) Again, to succeed with this argument,

---

[3] The draft IMP submitted by Plaintiffs states that inmates may retain beading materials among their personal property. (IMP # PCS.002.REL.004 § IV.E, Pls.' Br. Ex. A.)

Plaintiffs must first establish that either the creation of colored beadwork, or a specific use of colored beadwork, is an exercise of religion, and that this exercise of religion is interfered with by a policy limiting the beads to white; they have shown neither.

In sum, Plaintiffs have failed to present evidence to support essential elements of their case. Plaintiffs contend that "deprivation of the use of colors would constitute a substantial burden," but leave much unexplained and unsupported. (Pls.' Reply Br. 2.) "Use of colors" is quite vague, and Plaintiffs never clearly state whether it is the act of creation of color patterns or a particular act of display of color patterns that is the claimed religious exercise. The Federal Bureau of Prisons references do not provide evidence supporting either alternative. Thus, the bottom line problem for Plaintiffs is twofold: 1) they do not offer evidence that any particular use of colors is a Native American religious exercise; and 2) they do not offer evidence that the policy at issue so interferes with religious exercise that it constitutes a substantial burden. These are defects fatal to their case on this issue, and they constitute a complete failure of proof as to essential elements of their case. In the absence of such evidence, this Court cannot find that the IMP at issue substantially burdens the exercise of religion. As to the IMP color policy, partial summary judgment will be granted in Defendants' favor.

Because Plaintiffs have failed to demonstrate that the color policy constitutes government imposition of a substantial burden on religious exercise, the Court need not reach the arguments regarding the balancing of compelling government interests and the least restrictive means of furthering that interest.

Plaintiffs also challenge the IMP provision which allows guards to search inmates' religious articles outside the presence of the Supervisor of Chaplaincy Services or the Chaplain

during a routine cell search, if the inmate gives permission.  Plaintiffs make two arguments: 1) the policy could lead to desecration of religious items; and 2) the policy "is almost certain to increase the likelihood of mischief during routine cell searches" because, essentially, corrections officers will lie and say searches were permitted when they were not.  (Pls.' Br. 4.)

As to the first argument, this Court does not see how a policy which gives inmates the right to refuse a search outside the presence of the Supervisor of Chaplaincy Services or the Chaplain allows desecration of religious items, as the inmate has the power to refuse permission.

As to the second argument, it is directed to a potential abuse of power too remote from the exercise of religion.  Plaintiffs have not argued, no less shown, that the "mischief" they raise the spectre of will cause an interference with the exercise of religion.  RLUIPA does not forbid mischief, unless it is shown to substantially burden the exercise of religion.  Plaintiffs have not explained how the misbehavior they expect from corrections officers will substantially burden a religious exercise, as required for protection under RLUIPA.

Under RLUIPA, Plaintiff bears the burden of showing that a government practice substantially burdens the exercise of religion.  Plaintiff has failed to carry that burden.  As to the validity of the two IMP provisions under RLUIPA, Plaintiffs have not shown that they are entitled to judgment as a matter of law, and their motion for partial summary judgment will be denied.  Defendants have shown that they are entitled to judgment as a matter of law and, pursuant to FED. R. CIV. P. 56(c), their motion for partial summary judgment will be granted.

B.   The motion to dismiss

Defendants move to dismiss as moot the injunctive relief claims of Plaintiffs Sisneros and Sanabria, contending that these Plaintiffs have been transferred out of New Jersey custody and,

as such, no longer have a live interest in the outcome of this suit. Plaintiffs agree that, as to Sanabria, he has been transferred to Arizona, and, as to Sisneros, they do not represent him. Sisneros has not filed a response to Defendants' motion.[4]

"The doctrine of mootness requires that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." Brown v. Phila. Hous. Auth., 350 F.3d 338, 343 (3d Cir. 2003). There is no actual controversy between Defendants and Plaintiffs Sanabria and Sisneros. Defendants' motion to dismiss the injunctive relief claims of Plaintiffs Sisneros and Sanabria will be granted, and these claims will be dismissed without prejudice.

## CONCLUSION

For the reasons stated above, Plaintiffs' motion for partial summary judgment on the validity under RLUIPA of two provisions of the New Jersey Department of Corrections' IMPs is **DENIED**. Defendants' motion for partial summary judgment on the validity under RLUIPA of two provisions of the New Jersey Department of Corrections' IMPs is **GRANTED**. Defendants' motion to dismiss the injunctive relief claims of Plaintiffs Sisneros and Sanabria is **GRANTED**, and these claims are dismissed without prejudice. The Court sua sponte orders that further proceedings in this action are **STAYED** pending the release of Defendant Sisneros from incarceration.

    s/ Stanley R. Chesler
    Stanley R. Chesler, U.S.D.J.

Dated: June 5, 2007

---

[4] This decision leaves only one issue remaining in the case, the monetary relief claim of pro se Defendant Sisneros. As Sisneros is incarcerated in Arizona, and unable to proceed on this claim at this time, the case will be stayed pending his release.